IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-488-D

| | |
|---|---|
| GEMINI INSURANCE COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| HARRAH'S NC CASINO COMPANY, ) | |
| LLC, CAESARS ENTERTAINMENT ) | |
| CORPORATION, OLD REPUBLIC ) | |
| INSURANCE COMPANY, and EASTERN ) | |
| BAND OF CHEROKEE INDIANS ) | |
| ) | |
| Defendants. ) | |

On November 1, 2019, Harrah's NC Casino Company, LLC ("Harrah's NC"), Caesars Entertainment Corporation ("CEC"), and Old Republic Insurance Company ("Old Republic"); (collectively, "the removing defendants") removed this case from Wake County Superior Court to this court based on diversity jurisdiction [D.E. 1]. On November 29, 2019, Gemini Insurance Company ("Gemini" or "plaintiff") moved to remand [D.E. 10], filed a memorandum in support [D.E. 11], and argued that diversity jurisdiction does not exist in this case. On December 20, 2019, the removing defendants responded in opposition [D.E. 26], and filed declarations and affidavits in support [D.E. 27, 28]. On January 3, 2020, Gemini replied [D.E. 29].[1] As explained below, the court grants the motion to remand.

---

[1] The Eastern Band of Cherokee Indians ("EBCI") has not filed a responsive pleading or been involved in the dispute concerning removal. On January 21, 2020, EBCI acknowledged service [D.E. 31]. On May 11, 2020, Gemini moved for entry of default against EBCI [D.E. 32]. On June 1, 2020, the removing defendants opposed the motion [D.E. 33]. On June 15, 2020, Gemini replied [D.E. 34].

I.

This action stems from an insurance coverage dispute that began in state court over a wrongful death action in tribal court. On May 9, 2019, Louis Campos filed a second amended complaint in the Cherokee Court of the Eastern Band of Cherokee Indians for the wrongful death of his wife, Sheila Campos, against EBCI, Harrah's NC, Caesars Entertainment Operating Company ("CEOC"), Tribal Casino Gaming Enterprise ("TCGE"), Smokey Mountain Properties LLC, and Mark Henry Fortner ("the wrongful death lawsuit"). See Ex. C [D.E. 1-4] 258–76. According to the wrongful death lawsuit, on July 10, 2016, a vehicle hit Sheila Campos as she walked in a crosswalk on Paint Town Road/U.S. Route 19 in Cherokee County, North Carolina. See id. at 262–63. When the vehicle hit Sheila Campos, she was walking from Harrah's Cherokee Casino Resort ("the Resort") to the Stonebrook Lodge ("the Lodge"), where she was staying. See id. On July 17, 2016, Sheila Campos died from her injuries. See id. at 263. In the wrongful death lawsuit, Louis Campos alleges several theories of liability, including premises liability, and contends that the streetlight located in front of the Lodge "was not in working order" and caused the death of his wife. See id. at 263–64. On October 29, 2019, Gemini filed an amended complaint ("the state court lawsuit") in Wake County Superior Court against Harrah's NC, CEC, Old Republic, and EBCI over the insurance coverage for the wrongful death lawsuit. See Ex. C [D.E. 1-4] 1–15. On November 1, 2019, the removing defendants removed the state court lawsuit to this court based on diversity jurisdiction. See [D.E. 1].

The state court lawsuit involves a web of interconnected commercial entities, insurance policies, and agreements. Gemini insures EBCI and issued a sovereign national commercial general liability insurance policy with effective dates of October 1, 2015, to October 1, 2016. See Ex. C [D.E. 1-4] 1; [D.E. 1] ¶ 2. Gemini is a Delaware corporation with its principal place of business in

2

Connecticut; therefore, it is a citizen of both Delaware and Connecticut. See [D.E. 1] ¶ 23. EBCI owns the Resort, but Harrah's NC manages it as part of a management agreement ("the management agreement"). See [D.E. 1] ¶ 12. EBCI is a federally-recognized Indian tribe. See id. at ¶ 25.[2] Harrah's NC has two members, CEOC—whose sole member is named defendant, CEC—and Harrah's Management Company, unnamed here. See id. at ¶ 9. CEC is a Delaware corporation with its principal place of business in Nevada. Thus, it is a citizen of Delaware and Nevada. See id. at ¶ 26. Harrah's Management Company is a citizen of Nevada. See id. The citizenship of CEC and Harrah's Management Company, as the only two members of Harrah's NC, determines Harrah's NC's citizenship. Accordingly, it is a citizen of Delaware and Nevada. See id. Old Republic insures CEC and issued a commercial general liability insurance policy with effective dates of July 1, 2016, to July 2, 2017. See Ex. C [D.E. 1-4] 1; [D.E. 1] ¶ 8. CEC's policy with Old Republic covers CEC's subsidiaries, divisions, and affiliated organizations. See Ex. C [D.E. 1-4] 2. Old Republic insures Harrah's NC as a subsidiary of CEC. See [D.E. 1] ¶ 16. Old Republic is incorporated in Pennsylvania, where it also has its principal place of business. Hence, Old Republic is a citizen of Pennsylvania. See id. at ¶ 24.

The management agreement requires Harrah's NC to provide insurance for EBCI in certain circumstances. It states: "The Manager [i.e. Harrah's NC], on behalf of the Tribe [i.e. EBCI], shall obtain and maintain, or cause its agents to maintain, with responsible insurance carriers licensed to do business in the state of North Carolina, insurance satisfactory to Manager and the Bank covering

---

[2] Indian tribes are not citizens of any state and may not sue or be sued under 28 U.S.C. § 1332. See, e.g., Wells Fargo Bank, Nat'l Ass'n v. Lake of the Torches Econ. Dev. Corp., 658 F.3d 684, 692–94 (7th Cir. 2011) (collecting cases). However, "a corporation chartered under Native American tribal law should be treated as a citizen of a state" for purposes of diversity jurisdiction. Id. at 693. Because the court decides this motion on other grounds, the court does not address EBCI's citizenship status.

<u>the Facility and the operations of the Enterprise</u>." Ex. A [D.E. 1-4] 60 (emphasis added). The management agreement defines the terms enterprise, facility, and property. See id. at 34–40. The management agreement requires Harrah's NC, on behalf of EBCI, to obtain "[c]ommercial general liability insurance naming the Manager [i.e. Harrah's NC], Tribe [i.e. EBCI], and the TCGE as insureds, covering bodily injury, personal injury (including humiliation) . . . in an amount equal to not less than $50,000,000 single limit per occurrence." Id. at 100.

Gemini and the removing defendants disagree about where they must litigate who must provide coverage to EBCI for the wrongful death lawsuit. Gemini is providing defense to EBCI in Cherokee Court, but contends in the state court lawsuit that the management agreement requires Old Republic to defend EBCI. See Ex. C [D.E. 1-4] 1–16. The removing defendants removed the state court lawsuit to this court under 28 U.S.C. §§ 1332, 1441, and 1446 and allege that Gemini fraudulently joined and improperly served EBCI and also fraudulently joined Harrah's NC and CEC. See id. [D.E. 1] ¶¶ 25–26. Proper joinder of any defendant from Delaware or Connecticut defeats diversity because plaintiff Gemini is a citizen of Delaware and Connecticut. See id. at ¶ 23.

In moving to remand the case to state court, Gemini argues that it did not fraudulently join any defendants, that the removing defendants did not secure the consent for removal of all defendants (namely, EBCI), that the removing defendants failed to serve EBCI with notice of removal, and that "certain procedural omissions and irregularities justify remand." See [D.E. 11] 9–17. The removing defendants disagree and argue that EBCI need not have given consent for removal, that Gemini has not alleged sufficient facts to support this court's personal jurisdiction over CEC, and that Gemini fraudulently joined CEC, Harrah's NC, and EBCI. See [D.E. 26] 8–24. In reply, Gemini argues that it properly served and joined EBCI, that the removing defendants failed to secure the consent of EBCI for removal, that EBCI, Harrah's NC, and CEC are each interested

4

and necessary parties, that the personal jurisdiction argument is premature, that the removal's procedural deficiencies merit remand, that the "First Affidavit of Terry Brown" is invalid under North Carolina law, and that the removing defendants seek to litigate liability, rather than coverage. See [D.E. 29] 2–9.

II.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citation omitted). "Subject matter jurisdiction defines a court's power to adjudicate cases or controversies — its adjudicatory authority — and without it, a court can only decide that it does not have jurisdiction." United States v. Wilson, 699 F.3d 789, 793 (4th Cir. 2012). Diversity jurisdiction invokes the court's subject-matter jurisdiction and applies if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Under the diversity statute, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Id. § 1332(c)(1). "Normally, complete diversity of citizens is necessary for a federal court to exercise diversity jurisdiction, meaning the plaintiff cannot be a citizen of the same state as any other defendant." Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015).

A defendant may remove a case to federal court based on diversity jurisdiction. See 28 U.S.C. § 1441(a). But if diversity is incomplete, a federal court must remand the removed case to state court. See, e.g., 28 U.S.C. § 1447(c); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996); Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); Sampson v. Leonard, No. 4:10-CV-121-D, 2011 WL 129634, at *1

5

(E.D.N.C. Jan. 12, 2011) (unpublished). The fraudulent-joinder doctrine "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). To prove fraudulent joinder, the removing party bears the burden of establishing (1) "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court" or (2) that "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (citation and quotation omitted); see Weidman, 776 F.3d at 218; Mayes, 198 F.3d at 464. This standard, which favors the plaintiff even more than the Rule 12(b)(6) standard, requires the removing defendants to "show that the plaintiff cannot establish a claim against the nondiverse defendant [in state court] even after resolving all issues of fact and law in the plaintiff's favor." Marshall, 6 F.3d at 232–33; see Mayes, 198 F.3d at 464. Moreover, in determining whether fraudulent joinder exists, the court can consider the entire record and is not bound by the pleadings. See Mayes, 198 F.3d at 464. Furthermore, the court can also take judicial notice of documents attached to the notice of removal and other pleadings in considering jurisdictional facts. See, e.g., Fed. R. Evid. 201; cf. Lolavar v. de Santibanes, 430 F.3d 221, 224 n.2 (4th Cir. 2005). At bottom, "ultimate success [in the state-court action] is not required to defeat removal. Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." Hartley v. CSX Transp., Inc., 187 F.3d 422, 426 (4th Cir. 1999) (citations omitted).

Gemini's motion to remand requires the court to consider Gemini's state-law claims. The parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co.

6

Case 5:19-cv-00488-D   Document 35   Filed 08/14/20   Page 6 of 11

v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[3] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

The parties spent considerable energy briefing ancillary issues. These issues include, inter alia, whether EBCI received proper service and consented to removal, CEC's personal jurisdiction, and various other procedural issues. But resolving this motion turns on one question concerning fraudulent joinder: can Gemini establish a cause of action against the nondiverse defendants in state court? If so, the court must remand the action to state court because no diversity of citizenship exists. If not, the court retains jurisdiction, and the litigation in this court continues apace.

The North Carolina Declaratory Judgment Act, N.C. Gen. Stat. § 1-253 et. seq. ("the

---

[3] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

7

Declaratory Judgment Act") grants courts the "power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." N.C. Gen. Stat. § 1-253. It states:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

Id. § 1-254. An actual controversy must exist between the parties for a declaratory judgment action to proceed, but plaintiffs need not "allege or prove that a traditional cause of action exists against defendants in order to establish an actual controversy." Conner v. N. Carolina Council of State, 365 N.C. 242, 258, 716 S.E.2d 836, 846 (2011) (alteration and quotation omitted); Sharpe v. Park Newspapers of Lumberton, Inc., 317 N.C. 579, 583, 347 S.E.2d 25, 29 (1986). A court may issue a declaratory judgment when (1) it will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate or afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. See Augur v. Augur, 356 N.C. 582, 588–89, 573 S.E.2d 125, 130 (2002) (alteration and quotation omitted); see Conner, 365 N.C. at 258, 716 S.E.2d at 846; Goldston v. State, 361 N.C. 26, 33, 637 S.E.2d 876, 881 (2006). The Declaratory Judgment Act specifically contemplates insurance coverage disputes: "a controversy between insurance companies . . . with respect to which of two or more of the insurers is liable under its particular policy and the insurers' respective liabilities and obligations, constitutes a justiciable issue and the court should . . . render a declaratory judgment as to the liabilities and obligations of the insurers." N.C. Gen. Stat. § 1-257. Ultimately, "[t]he purpose of the Declaratory Judgment Act is to settle and afford relief from uncertainty concerning rights, status and other legal relations, and although the [Declaratory Judgment] Act is to be liberally construed, its provisions are not without limitation." N. Carolina

Consumers Power, Inc. v. Duke Power Co., 285 N.C. 434, 446, 206 S.E.2d 178, 186 (1974); see N.C. Gen. Stat. § 1-257.

As for the parties to a declaratory judgment action, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." N.C. Gen. Stat. § 1-260. A party is necessary to a declaratory judgment action "when he has or claims to have a material interest in the subject matter of the complaint; that is, when he is so vitally interested in the controversy involved that a valid judgment cannot be entered in the action which would completely and finally determine the controversy, without that person's presence as a party." State ex rel. Edmisten v. Tucker, 312 N.C. 326, 343, 323 S.E.2d 294, 306 (1984). Any declaratory judgment action that does not include all necessary parties is null and void. See, e.g., Smith v. USAA Cas. Ins. Co., 261 N.C. App. 40, 49–50, 819 S.E.2d 610, 616 (2018).

The court need not decide whether EBCI is a necessary party because Harrah's NC and CEC are necessary parties and not fraudulently joined. When Gemini sought a declaratory judgment in state court, it asked the state court to determine whether Old Republic must defend and indemnify EBCI in the wrongful death lawsuit. See [D.E. 1-4] 3–6, 12–13. This determination fulfills Augur's two-part test and requires the court to interpret the management agreement between EBCI and Harrah's NC. See Augur, 356 N.C. at 588–89, 573 S.E.2d at 130. EBCI can receive coverage only from Old Republic through Harrah's NC, who then receives coverage only from Old Republic through the named insured, CEC. Thus, a court that interprets the language of the management agreement necessarily determines the legal obligations of both Harrah's NC and CEC. Of course, Old Republic's obligations are implicated, but Old Republic is not a party to the management agreement. Old Republic's obligation to EBCI instead arises only from Harrah's NC's obligation

9

to EBCI. Either EBCI falls under Harrah's NC and CEC's policy with Old Republic, or it does not. Nonetheless, "no decree can be rendered without affecting" Harrah's NC or CEC's own interests. Smith, 261 N.C. App. at 50, 819 S.E.2d at 616; cf. Am. Int'l Ins. Co. v. Heltzer, No. CIV. A. AW-00-3355, 2001 WL 225031, at *2 (D. Md. Feb. 7, 2001) ("Moreover, judicial resolution of this matter [concerning named insured's daughter] prospectively affects the [named insured's] rights and obligations under the policy.").[4]

A hypothetical illustrates how this dispute implicates Harrah's NC and CEC's legal obligations. Suppose this court decides that the state court lawsuit concerns only Gemini and Old Republic (as the removing defendants contend), and that Gemini fraudulently joined Harrah's NC and CEC. Suppose also that Gemini wins in this court on the coverage issue, and Old Republic loses. Old Republic must then defend and indemnify EBCI in the underlying lawsuit in Cherokee Court. Suppose also that EBCI loses in the tribal court, and the verdict exceeds the coverage limit of $50,000,000. Most assuredly, Harrah's NC and CEC would contest who had to provide coverage for EBCI, Gemini or Old Republic, in the first place. In this counterfactual universe, this court's determination concerning the insurance coverage dispute between Gemini and Old Republic would not bind Harrah's NC or CEC because they were not parties to the action. Thus, Harrah's NC and CEC are "so vitally interested in the controversy involved that a valid judgment cannot be entered in the action which would completely and finally determine the controversy." Tucker, 312 N.C. at 343, 323 S.E.2d at 306. Hence, Gemini did not fraudulently join Harrah's NC and CEC. Moreover, CEC, Harrah's NC, and Gemini are citizens of Delaware, thereby defeating diversity jurisdiction.

---

[4] On November 15, 2019, the Cherokee Court dismissed EBCI from the wrongful death lawsuit. See [D.E. 28-2]. Gemini, however, notes that "the likelihood of an appeal remains, and [p]laintiff still seeks to recover the costs and fees it expended in defending EBCI as a result of Old Republic's refusal to accept the tender for defense and indemnity." [D.E. 11] 11 n.2.

10

Accordingly, this court remands the action to Wake County Superior Court.

Gemini seeks costs and fees. However, an objectively reasonable basis for removal existed. Thus, the court declines to award costs or fees to Gemini. See 28 U.S.C. § 1447(c); see, e.g., Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."); Badalato v. Wish to Give Prod., LLC, No. 7:19-CV-66-FL, 2019 WL 3661164, at *8 (E.D.N.C. Aug. 6, 2019) (unpublished).

III.

In sum, the court GRANTS plaintiff's motion to remand [D.E. 10], REMANDS the action to the General Court of Justice, Superior Court Division for Wake County, and DECLINES to award costs or attorney fees. All other motions remain pending.

SO ORDERED. This 14 day of August 2020.

                                           JAMES C. DEVER III
                                           United States District Judge